### SPORTING GOODS SALES CO. v. HASKELL GOLF BALL CO.

(Circuit Court of Appeals, First Circuit. September 17, 1914. On Petition for Rehearing, November 11, 1914.)

#### No. 1059.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GOLF BALL.

The Work and Haskell patent, No. 622,834, for a golf ball, the core of which is composed of rubber thread wound under tension, covers a ball not merely differing in degree from the old style gutta percha ball, but one substantially different in kind, which by reason of its specific difference in construction and greater resiliency has a much longer range of flight, and the patent discloses invention and is valid; also *held* infringed.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the Haskell Golf Ball Company against the Sporting Goods Sales Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 210 Fed. 624.

Charles F. Perkins, of Boston, Mass. (Carroll L. Perkins, of Boston, Mass., on the brief), for appellant.

Frederick P. Fish, of Boston, Mass., and Charles Neave, of New York City (William G. McKnight, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and BROWN, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BROWN, District Judge. This is an appeal from a decree of the District Court finding valid and infringed by the appellant letters patent to Work and Haskell, No. 622,834, April 11, 1899, for a ball for use especially in the game of golf.

The claims are:

"1. A golf ball, comprising a core composed wholly or in part of rubber thread wound under high tension, and a gutta percha inclosing shell for the core, of such thickness as to give it the required rigidity, substantially as described.

"2. A golf ball, comprising a central core section of relatively nonelastic material, rubber thread wound thereon under tension, and an inclosing shell of gutta percha, of such thickness as to give it the required rigidity, substantially as described."

The solid gutta percha golf ball, which was in general and practically exclusive use for about half a century before it was displaced by a composite ball of the type described in the patent in suit, was well suited to the requirements of the game of golf. It was durable, and while it was of such rigidity that it could be made to run accurately over the putting green, thus answering one of the main requirements of the game, it was also capable of a considerable length of flight by reason of its resiliency. The composite ball is also sufficiently rigid for use in putting, but differs substantially from the solid ball in having a much longer flight under the same force. As the golf player seeks to obtain by certain strokes a maximum of distance, and as the composite ball enables the player, using the same force, to get a length of drive of which the old ball is incapable, the new ball soon displaced the solid gutta percha ball. According to the evidence the quantitative gain in distance was from 20 to 25 per cent., and this was a very substantial matter in a game in which the player seeks to cover a long course in the minimum number of strokes.

The problem of improving upon the gutta percha golf ball involved not merely the production of a ball of greater resiliency, but of a ball which, like the solid gutta percha ball, should be rigid and thus adapted for accuracy in putting, and also sufficiently durable for practical use, as well as more resilient and of longer flight.

According to the evidence of the appellant, the feature of superiority by which the new ball displaced the old was merely its longer flight. There is evidence to the effect that on the putting green the player accustomed to the old ball found the new ball more difficult to control, because under the light putting stroke, as well as under the heavier driving stroke, the ball ran farther than the old. The general adoption of the new ball by the players who had been accustomed to the old ball shows, however, that the advantage of longer flight overbalanced any disadvantages from greater liveliness on the putting green.

On the putting green there is, with either ball, no difficulty in applying an amount of force adequate to make the ball run to the hole. If in putting the new ball runs farther than the old, this is compensated for by using a little less force.

While the new ball doubtless required some modification of the mode of play of those who learned the game with the old ball, this

does not alter the fact that the new ball is well adapted to the require-
ments of all parts of the game. The player who has learned the game
since the adoption of the new ball is not embarrassed by knowledge
of the prior art of putting with the gutta percha ball, and the fact
that the older players have universally adopted the new ball shows
that, even if the new ball exhibits in all parts of the game a greater
degree of resiliency than the old, it is still an efficient substitute for
the old ball on all shots where there is with either ball no practical
difficulty in applying an amount of force adequate for a short carry
or run. When the force to be applied for the shot is rather a ques-
tion of judgment than of physical ability, it might, perhaps, be said
that the difference between the two balls is merely one of degree.
We think, however, that the appellant's argument, that because on
every shot the new ball exhibits qualities due to its greater resiliency
the difference between the two balls simply amounts to a difference
in degree, and not in mode of operation, is unsound.

The new ball is a projectile which, by reason of its specific differ-
ences of construction, has a much longer range of flight. Under the
maximum force of the player this projectile will go much farther
than any other. This quantitative gain in flight is a positive thing. It
is a new result not obtainable with the older projectile. It results
from new qualities of the ball itself. To obtain 20 or 25 yards more
distance than with the old ball the player need only purchase the new
ball, and need not change the strength of his stroke. The new result
may possibly be due merely to the fact that the new ball is more resili-
ent than the other; but this excess of resiliency is due to the new
combination. In order to gain the extra distance the player utilizes
qualities which are possessed by the new ball and not by the old ball.

As the new ball has within itself, so to speak, some 20 or 25 yards
of distance not possessed by the old ball with respect to the driving
stroke, it is substantially different in kind from the old ball.

Within the range of distance which the player can obtain with the
gutta percha ball the difference is not so striking, for one ball can,
with some changes in the force applied, be made to do what the other
can do.

The new ball may be substituted for the old on all points of the
game, but the converse is not true, since on the drive the old ball can-
not be substituted for the new to obtain the same result.

We agree with the finding of the District Court that there is a class
of strokes whereby the patented golf ball may be made to behave as
if it had not that elasticity which it is capable of displaying under
heavier strokes, and which, when so displayed, is greater (as is not
disputed) than that of any previous golf ball.

If it be said that the greater resiliency of the new ball, or of its
core, is evoked under the light strokes as well as under the heavier
strokes, it may also be said that upon the putting green this greater
resiliency is not used for the purpose of obtaining distance which the
physical force of the player could not attain with the older ball, where-
as in the driving strokes the resiliency or other qualities of the ball
effects a result that otherwise was not within the physical power of

the player. In certain strokes he gets distance which he could not get with the old ball; in certain strokes he gets, with less expenditure of force, distance that he could get with the old ball; and in those strokes in which the player exerts but a slight amount of physical force, whether with the old or new ball, the new ball, like the old, may be made to putt steadily and accurately.

We find no error in the conclusion of the District Court that the patentees' core and shell in combination produce a new mode of operation, and that the patent is not void as disclosing no patentable invention.

The argument that the change from the former golf ball was obvious is of little force, in view of the lapse of half a century without the production of a ball having this special combination of elements. It does not seem on its face obvious that so large a gain in flight would result from combining a gutta percha shell and a core of rubber wound under high tension. The evidence from the defendant as to the difficulties of producing a thin shell of gutta percha that would withstand forcible blows, and of producing a rubber-wound core which should be a true sphere, tends to show that after the general conception of making a golf ball more resilient it was still necessary to determine what specific construction of core and of shell was necessary, and whether a practical composite ball could be made, having such gain of flight as was of substantial importance, and which in other respects could compare favorably with a homogeneous and acceptable golf ball.

We think it not safe to judge of the patentability of the ball by supposing it to be merely the embodiment of the general conception of giving greater resiliency by the use of rubber and thus making a livelier ball. The conception was much more specific than this, and comprehended a unitary structure that should not only be more resilient, but should meet the various requirements of the specific game for which the ball was devised.

The record discloses by prior patents and other evidence that a number of attempts were made by other inventors to improve golf balls. No one of these inventors hit upon the successful means of doing so that are disclosed in the patent in suit.

Upon the other questions in the case, including those of anticipation and infringement, we need add nothing to the careful opinion of the learned judge of the District Court.

The decree of the District Court is affirmed, and the case is remanded to that court for further proceedings in accordance with this opinion; and the appellee recovers costs in this court.

## On Petition for Rehearing.

PER CURIAM: This petition for rehearing is in substance merely a renewal of contentions made at final hearing, fully examined and considered unsound.

The petitioner states:

"It would seem indisputable that the limitation of the claims called for specific thickness that must result in such degree of rigidity of the shell itself

that the ball is rendered substantially no more resilient than a solid ball on the usual strokes of the putting green."

We find in the patent no basis for such limitation of the claims, nor for the contention that the gutta percha shell must be of such thickness and so unyielding as to prevent a light stroke from evoking any of the elasticity of the rubber core; nor does the file wrapper disclose any sufficient reason for so limiting the claims.

We regard it as entirely immaterial that even on light strokes the new ball may exhibit somewhat greater resiliency than the old gutta percha ball.

By reason of the great resistance to deformation of shape, due both to the core of rubber thread wound under high tension and to the gutta percha shell, the patented ball remains rigid under moderate blows from a club, or from contact with the ground; and because it is then not deformed, or but very slightly deformed, it does not exhibit that quality of high resiliency which is evoked by a more powerful blow. Under a powerful blow the rigidity of both shell and core is overcome, the ball is greatly deformed in shape, and then exhibits that extraordinary degree of resiliency to which the patentees ascribe the long-driving qualities of the ball.

The defendant's contention that nonresiliency must be due to the thickness of the shell and resiliency to the core involves a fallacious division of a unitary structure, not justified by the specification nor by a fair construction of the description in the file wrapper, but contradicted by the specification, which very clearly states that both core and shell co-operate in preserving the rigidity of the ball. The ball has high rigidity in the sense of resistance to deformation, and is yet capable of very great deformation of shape under violent impact, as is indicated by the fact that after such impact the blackened face of a club exhibits a circle three-quarters of the diameter of the ball.

The patentees make no comparison between the action of the patented ball and of the gutta percha ball, except possibly such as may be implied in the statement, "Our golf ball has exceptionally high-driving qualities." The comparison is between the actions of the patented ball under impacts of different force.

The District Court correctly said:

"The shell of the patent is to be comparatively unyielding as regards the elastic core it incloses."

As the District Court found, and as we find, the defendant's shell meets this as well as the rest of the patentees' description of the shell.

The defense of noninfringement rests upon what we regard as an undue limitation of the claims. Upon what we regard as proper construction of the claims, we find them valid and infringed.

Petition for a rehearing denied.